Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Pablo Orozco (SBN 274267)
porozco@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:   (818) 839-2333
Facsimile:    (818) 986-9698


*Additional Counsel Identified Below*
Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW MAYERSON, LANCE KOHN, QUENTON CHAPMAN, CHRIS DECKER, JOSEPH BENTZ, ADAM DEMUTH, THOMAS LYNG, GARY PALMER, ESTHER PALMER individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br>      vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.; AUDI AKTIENGESELLSCHAFT; AND VOLKSWAGEN AKTIENGESELLSCHAFT,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1.     Plaintiffs, individually and on behalf of all other members of the putative, nationwide class and state sub-classes defined below (collectively "Class"), allege for their Class Action Complaint ("Complaint") against defendants Volkswagen Group of America, Inc., Audi Aktiengesellschaft and Volkswagen Aktiengesellschaft (collectively "Defendants" or "Volkswagen"),  upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief based upon the investigation, as follows:

## <u>NATURE OF THE CASE</u>

2.     Defendants have ***admitted*** that they rigged hundreds of thousands of Volkswagen and Audi vehicles to evade strict environmental laws designed to protect public health.  Defendants have also ***admitted*** that they deliberately concealed from their customers, the public and regulators that the diesel Volkswagen and Audi vehicles Defendants manufactured, marketed and sold emit more toxic pollutants than (a) the applicable law allows and (b) Defendants represented in their aggressive marketing campaigns.

3.     In fact, shortly before resigning, Defendants' Chief Executive Officer, Martin Winterkorn, conceded Defendants had deliberately deceived the public and regulators, noting that

"Manipulation and Volkswagen – that must never be allowed to happen again.  Millions of people all over the world trust our brands, our cars and our technologies.  I am deeply sorry we have broken this trust.  I would like to make a formal apology to our customers, to the authorities and to the general public for this misconduct."[1]

Significantly, Dr. Winterkorn additionally stated that Defendants were willing to "do everything necessary to win back trust – step by step."  *Id.*

4.     At its core, this lawsuit tests Defendants' commitment to redressing the economic harms that Plaintiffs and the Class have suffered as a result of Defendants'

---

[1]  http://www.volkswagenag.com/content/vwcorp/info_center/en/themes/2015/09/ Volkswagen_AG_has_issued_the_following_information.html

egregious, profit-driven policy of deceit.

## JURISDICTION AND VENUE

5.     This Court may properly exercise jurisdiction in this case pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).   Plaintiffs and the Class are citizens of states different than Defendants' home state, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

6.     This Court may also properly exercise jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs assert a federal RICO claim against Defendants.  This Court may also exercise supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 because Plaintiffs' federal and state law claims arise from the same set of facts.

7.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.  This Court has personal jurisdiction over Defendants pursuant to California Code of Civil Procedure 410.10 and/or 28 U.S.C. § 1965 because Defendants are found or have agents or transact business in this District.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, and the Defendants have caused harm to Plaintiffs or members of the Class who reside in this District.  Venue is likewise proper in this district pursuant to 18 U.S.C. § 1965.

## PARTIES

### Plaintiffs

9.     Unless otherwise indicated, all Plaintiffs identified below purchased their Defective Vehicles primarily for personal, family and household use.  All Plaintiffs identified below, just like all members of the Class, were harmed by Defendants' conduct and suffered actual damages.  That the Defective Vehicles emit a significantly greater amount of toxic pollutants than (a) is allowable under the regulations and (b) was represented by Defendants, greatly diminishes the value of Plaintiffs' Defective Vehicles.  Such vehicles and their corresponding brands have been stigmatized as a

result of being recalled and in light of the widespread publicity given to Defendants' deceptions.

10.     Additionally, all Plaintiffs identified below and all members of the Class failed to receive the benefit of their bargain.  They purchased and leased Defective Vehicles that are of a lesser standard, grade and quality than represented, and they did not receive vehicles that met ordinary and reasonable consumer expectations regarding safe and reliable operation.  All identified Plaintiffs and all members of the Class either purchased or leased Defective Vehicles for a higher price than they would have been willing to pay had the true "dirty" nature of the vehicles been disclosed.

11.     Further, all Plaintiffs identified below and all members of the Class suffered damages in the form of out-of-pocket and loss-of-use expenses and costs, including but not limited to expenses and costs associated with taking time off work, paying for rental cars or other transportation arrangements, and child care.

Matthew Mayerson – California

12.     Plaintiff Matthew Mayerson resides in Menlo Park, California.  He presently owns a 2010 Volkswagen Jetta TDI that he purchased new from a Volkswagen dealership in Sunnyvale, California.  Plaintiff Mayerson paid approximately $28,000 for the vehicle.

13.     Plaintiff Mayerson recalls that prior to purchasing his Defective Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Defective Vehicles generally.  Plaintiff Mayerson purchased his Defective Vehicle in large measure because it was represented as being "clean" and fuel efficient.

14.     Plaintiff Mayerson would not have purchased his Defective Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

/ / /

Lance Kohn – Florida

15.     Plaintiff Lance Kohn resides in Court Plantation, Florida.  He presently owns a 2011 Volkswagen Jetta TDI.  He purchased his vehicle "certified used" from the Rick Case dealership in Weston, Florida.  Plaintiff Kohn paid approximately $21,000 for the vehicle.

16.     Plaintiff Kohn recalls that prior to purchasing his Defective Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Defective Vehicles generally.  Plaintiff Kohn purchased his Defective Vehicle in large measure because it was represented as being "clean" and fuel efficient.

17.     Plaintiff Kohn would not have purchased his Defective Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

Quenton Chapman – Georgia

18.     Plaintiff Quenton Chapman resides in Lawrenceville, Georgia.  He presently owns a 2013 Volkswagen Golf with a diesel engine.  He purchased his vehicle used approximately 3 months ago in June of 2015.  Plaintiff Chapman paid approximately $24,500 for the vehicle.

19.     Plaintiff Chapman recalls that prior to purchasing his Defective Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Defective Vehicles generally.  Plaintiff Chapman purchased his Defective Vehicle in large measure because it was represented as being "clean" and fuel efficient.

20.     Plaintiff Chapman would not have purchased his Defective Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

Christopher Decker – Indiana

21.     Plaintiff Chris Decker resides in Scottsburg, Indiana.  He presently owns a 2014 Volkswagen Jetta TDI.  He purchased his vehicle new from Sams Club in Clarksville, Indiana.  Plaintiff Decker paid approximately $22,600 for the vehicle.

22.     Plaintiff Decker recalls that prior to purchasing his Defective Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Defective Vehicles generally.  Plaintiff Decker purchased his Defective Vehicle in large measure because it was represented as being "clean" and fuel efficient.

23.     Plaintiff Decker would not have purchased his Defective Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

Joseph Bentz – New Jersey

24.     Plaintiff Joseph Bentz resides in Hamilton, New Jersey and presently leases a 2015 Volkswagen Passat TDI  worth approximately $30,000.

25.     Plaintiff Bentz recalls that prior to leasing his Defective Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Defective Vehicles generally.  Plaintiff Bentz leased his Defective Vehicle in large measure because it was represented as being "clean" and fuel efficient.

26.     Plaintiff Bentz would not have leased his Defective Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the trade-in/residual value of his vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

Adam DeMuth – New Jersey

27.     Plaintiff Adam DeMuth resides in Mount Laurel, New Jersey and presently

owns a 2013 Volkswagen Jetta TDI that he purchased used.

28.     Plaintiff DeMuth recalls that prior to purchasing his Defective Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Defective Vehicles generally.  Plaintiff DeMuth purchased his Defective Vehicle in large measure because it was represented as being "clean" and fuel efficient.

29.     Plaintiff DeMuth would not have purchased his Defective Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

Thomas Lyng – New York

30.     Plaintiff Thomas Lyng resides in East Aurora, New York.  He presently owns a 2014 Volkswagen Jetta TDI that he purchased new from a Volkswagen dealership in Orchard Park, California.  Plaintiff Lyng paid approximately $26,000 for the vehicle.

31.     Plaintiff Lyng recalls that prior to purchasing his Defective Vehicle, he encountered Defendants' representations concerning the quality, safety, "cleanliness" and fuel efficiency of the Defective Vehicles generally.  Plaintiff Lyng purchased his Defective Vehicle in large measure because it was represented as being "clean" and fuel efficient.

32.     Plaintiff Lyng would not have purchased his Defective Vehicle or would not have paid as much for it if he had known of the problems associated with its toxic emissions.  Plaintiff further believes that the value of his vehicle has diminished significantly ever since Defendants' deceptive practices were widely publicized.

Gary and Esther Palmer – Tennessee

33.     Plaintiffs Gary and Esther Palmer reside in Bartlett, Tennessee.  They presently own a 2014 Volkswagen Passat TDI that they purchased new from a Volkswagen dealership in Memphis.  Plaintiffs paid approximately $35,000 for the

1    vehicle.

2        34.    Plaintiffs recall that prior to purchasing their Defective Vehicle, they

3    encountered Defendants' representations concerning the quality, safety, "cleanliness"

4    and fuel efficiency of the Defective Vehicles generally.  The Lyngs purchased their

5    Defective Vehicle in large measure because it was represented as being "clean" and fuel

6    efficient.

7        35.    The Lyng Plaintiffs would not have purchased the Defective Vehicle or

8    would not have paid as much for it if they had known of the problems associated with its

9    toxic emissions.  Plaintiffs further believe that the value of their vehicle has diminished

10   significantly ever since Defendants' deceptive practices were widely publicized.

11   **Defendants**

12       36.    Defendant Volkswagen Group of America, Inc. ("VW USA") is a

13   corporation doing business in all 50 states, including California.  It is organized under

14   the laws of the State of New Jersey and its principal place of business is in Herndon,

15   Virginia.  At all relevant times,  VW USA was engaged in the business of designing,

16   manufacturing, constructing, assembling, marketing, distributing, and selling

17   automobiles throughout the United States, including but not limited to the Defective

18   Vehicles.

19       37.    Defendant Audi Aktiengesellschaft ("Audi AG") is a foreign, for-profit

20   legal entity with its principal place of business in Ingolstadt, Germany.  At all relevant

21   times, Audi AG was engaged in the business of designing, manufacturing, constructing,

22   assembling, marketing, distributing, and selling automobiles throughout the United

23   States, including but not limited to the Defective Vehicles.

24       38.    Defendant Volkswagen Aktiengesellschaft ("VW AG") is a foreign, for-

25   profit legal entity with its principal place of business in Wolfsburg, Germany.  VW AG

26   is the parent corporation of defendants VW USA and Audi AG.  At all relevant times,

27   Audi AG was engaged in the business of designing, manufacturing, constructing,

28   assembling, marketing, distributing, and selling automobiles throughout the United

States, including but not limited to the Defective Vehicles.

## FACTUAL ALLEGATIONS

39.     Defendants design, manufacture, market, distribute, and warrant Volkswagen and Audi vehicles in the United States.  Defendants recently surpassed Toyota, becoming the world's largest automaker, with diesel engine vehicles accounting for over 20 percent of its sales.  This case involves approximately 500,000 model year 2009-2015 Volkswagen and Audi Defective Vehicles.

**Defendants' False Promise of Clean Diesel**

40.     Diesel engines first became common in American passenger vehicles in the 1970s and 1980s, but gained a reputation as "dirty" because they emitted noxious gases and particulate matter.  As diesel engines need to be more robust than comparable gasoline engines, diesel-powered vehicles also cost more to produce and commanded a premium price.  These factors, combined with increasingly stringent emissions regulations caused diesel passenger vehicles to become increasingly unpopular in the American market.

41.     In the mid-2000s, California and several other states passed new emission standards strictly regulating exhaust emissions, including nitrogen oxides.  This effectively banned the sale of diesel passenger vehicles in these states because the nature of diesel engines inherently makes nitrogen oxide emissions a difficult problem to resolve.  Defendants and several other manufacturers addressed the increasingly exacting regulations by launching the joint BlueTec Diesel Initiative to research and develop emission treatment systems that complied with all applicable regulations.   By the late 2000s, Defendants claimed to have developed environmentally-friendly diesel engines that could meet modern emissions standards.

42.     Defendants expressly and deliberately marketed these new vehicles as "Clean Diesel" vehicles. Taking advantage of then-rising fuel prices, and diesel engines' fuel-efficiency and high torque outputs, Defendants told consumers they could have it all—power, high fuel economy, and low emissions—if they paid a few thousand dollars

more for its "clean" diesel vehicle.  Defendants embarked on a major marketing campaign emphasizing their vehicles' low emissions and environmental friendliness.  The efforts included creating websites, putting out press releases and airing television commercials.

43.    In August 2008, Defendants kicked off the campaign by announcing that it had developed the first diesel vehicle compliant in all fifty states under modern emission standards, its 2.0L TDI (Turbocharged Direct Injection) engine.  Then CEO Stefan Jacoby stated: "We're proud to be the first manufacturer to offer a clean diesel vehicle for sale in all fifty states" and argued that the clean diesel Jetta model "truly offer[s] a no compromise alternative fuel driving experience, that provides the customer the best of both worlds—excellent fuel efficiency combined with a dynamic driving experience."

44.    In 2009, the diesel Volkswagen Jetta TDI was selected as the Green Car of the Year by *Green Car Journal*.  Shortly thereafter Defendants  began to promote it as the "Official Pace Car of the Environment," describing it as the "best of both worlds, an alternative fuel vehicle with no compromises."  Defendants' website specifically emphasized emissions compliance, describing how "[f]uel efficiency, performance and convenience come standard with the 50-state compliant Jetta TDI sedan and Sportswagen models, which meet the most stringent emission standards in California."

45.    To further emphasize their environmental focus, Defendants created an entire campaign devoted to environmental sustainability called "Think Blue." According to the campaign, Defendants were dedicated to sustainable mobility and eco-friendly living, and its diesel vehicles are part of an environmentally friendly lifestyle. The TDI webpage states that "TDI represents one part of the Volkswagen Think Blue initiative, our goal of creating and encouraging eco-conscious products and behaviors." Think Blue is "about being more responsible on the road and more environmentally conscious."

**Regulations Applicable to Diesel**

46.    Emissions of pollutants have often been an obstacle for diesel-powered

vehicles. While the use of cleaner fuels and new technologies has improved certain types of emissions problems, others remain. In particular, as a result of their high combustion and compression pressures, diesel engines typically produce high levels of nitrogen oxides, which are a highly reactive group of gases that the EPA and other government agencies have found to create environmental problems and public health hazards. For example, direct exposure to this pollutant can cause respiratory problems, such as lung irritation, bronchitis, or pneumonia. Further, when it combines with sunlight, nitrogen oxide may create photochemical smog, which appears as a brownish ground-level haze and causes chest pains, shortness of breath, coughing and wheezing, and eye irritation.

47.     Because of the hazards created by nitrogen oxide emissions, both the EPA and CARB have regulated them. The Clean Air Act prohibits the sale of any vehicle in the United States that does not comply with emissions regulations set by the EPA. 42 U.S.C. § 7522. The regulations include certification levels of different levels of stringency called certification bins. Defendants chose to certify the Defective Vehicles to the Bin 5 standard, which has a maximum nitrogen oxide level of .05 g/mi for a vehicle's intermediate life (5 years/50,000 miles) and .07 g/mi for a vehicle's full useful life (10 years/120,000 miles). 40 C.F.R. § 86.1811-04(c). Moreover, every vehicle sold in the U.S. must be covered by Certificate of Conformity from the EPA. 40 C.F.R. § 86.1843-01. However, vehicles are only covered by a Certificate of Conformity if they are sold as described in the manufacturer's application for certification. *Id.* at §86.1848-10(c)(6).

48.     On the state level, CARB adopted Low-Emissions Vehicle (LEV) II standards that generally became applicable in the 2004 model year. *See* http://www.arb.ca.gov/msprog/levprog/cleandoc/cleancomplete%20lev-ghg%20regs%201-15.pdf (amended January 1, 2015); Cal. Code. Regs. Tit. 13 § 1961. Under this standard, nitrogen oxide emissions were significantly tightened and required the Defective Vehicles to emit no more than .05 g/mi initially, and no more than .07

g/mi over their useful life. Cal. Code. Regs. Tit. 13 § 221961.  Additionally, car manufacturers must be certified by CARB in order to sell vehicles in California.

49.     Both federal and California regulations mandate that manufactures include certain emissions-related labels on the vehicles they sell. First, the regulations require that an emissions label titled "Vehicle Emission Control Information" be placed under the hood or in the engine compartment and contain "an unconditional statement of compliance" with federal and California emissions regulations. 40 C.F.R. § 86.1807-01; Cal. Code. Regs. Tit. 13 § 1965. Auto manufacturers must affix this label to every motor vehicle that they intend to sell to the public in the United States subject to the applicable emissions standards.

## Defendants Deliberately Deceived Regulators and The Public

50.     Nevertheless, despite the obvious harms caused by nitrogen oxide emissions and the elaborate regulatory framework governing those emissions, Defendants deliberately opted to continue manufacturing, selling and distributing Defective Vehicles that put the public in harm's way.  Rather than design diesel engines that complied with the applicable regulations, Defendants chose to design a mechanism that allowed them to deceive and defraud their customers, the public and the authorities. Specifically, Defendants installed in each Defective Vehicle a "defeat device," which is hardware or software that "defeats" the vehicle's emission controls during normal vehicle operation—enabling the vehicle to produce low emissions during emissions testing, but not during normal operation.

51.     The Clean Air Act makes it a violation for any person to sell, manufacture, or install any component in a motor vehicle "where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle . . . in compliance with the regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." Clean Air Act, 42 U.S.C. § 7522(a)(3)(B); 40 C.F.R. § 86.1854012(a)(3)(ii). Similarly, the EPA has

specifically recognized that electronic control systems that affect the emission control system's performance may be defeat devices. EPA, *Advisory Circular Number 24-2: Prohibition on Emission Control Defeat Devices – Optional Objective Criteria* (Dec. 6, 1978). Similarly, vehicles equipped with defeat devices, which reduce the effectiveness of the emission control system during normal driving conditions, cannot be certified by CARB.

**The "Dirty" Truth Comes To Light**

52. In May 2014, West Virginia University's Center for Alternative Fuels, Engines & Emissions published the results of a study commissioned by the International Council on Clean Transportation that found in-use emissions from two Volkswagen vehicles (a 2012 Jetta and a 2013 Passat) that were significantly higher than the Tier 2 Bin 5 nitrogen oxide standard. The Jetta exceeded the standard by 15 to 35 times and the Passat exceeded it by 5 to 20 times.

53. Following publication of the study, the EPA and CARB began to investigate the issue. Defendants responded that increased emissions could be the result of unexpected technical issues or conditions. Defendants then issued a voluntary recall in December 2014, but testing performed by CARB and the EPA showed that there was only a limited benefit to the recall and that the vehicles still did not comply with EPA or CARB standards.

54. CARB and the EPA told Defendants that they would not approve certificates of conformity for Defendants' 2016 model year diesel vehicles until they explained the results, leading Defendants finally to admit that they had been deceiving the government and consumers. In a meeting with CARB and EPA staff on September 3, 2015, Defendants admitted that the Defective Vehicles were designed and manufactured with a defeat device in the form of a sophisticated software algorithm that detected when the vehicle was being tested for emissions standards based on inputs. During EPA emission testing, the vehicles' electronic control modules ran a particular calibration called the "dyno calibration" (referring to the equipment used in emissions testing–the

dynamometer) that produced compliant emissions results.  At all other times during normal vehicle operation, the vehicle software ran a separate "road calibration" that reduced the effectiveness of the lean pollutant trap and emission control systems. As a result, emissions of nitrogen oxides increased by a factor of 10 to 40 times above EPA compliant levels when driven by a consumer.

55.     On September 18, 2015, the EPA and CARB issued notices to Defendants directing CARB to immediately initiate discussions to rectify the emission non-compliance and noting that the EPA may seek up to $37,500 for each violation. Christopher Grundler, director of the EPA's Office of Transportation of Air Quality, said it is "incomprehensible" how the world's largest automaker could install "defeat devices" to evade emissions requirements.  The agency said the vehicles' software intentionally detects when the car is undergoing official emissions testing, "and turns full emissions controls on only during the test."  When vehicles are being driven normally, the computer disables the emissions controls.

56.     Because disengaging pollution controls can yield better performance, implementing changes to the emissions system will negatively impact the Defective Vehicles' performance and fuel economy.

## TOLLING OF THE STATUTE OF LIMITATIONS

**Fraudulent Concealment**

57.     Upon information and belief, Defendants deliberately concealed or failed to notify Plaintiffs and the Class that: (a) the Defective Vehicles contained "defeat devices" specifically designed to mask the emission of pollutants, (b) the Defective Vehicles emitted more pollutants than is allowable by regulators, and (c) the Defective Vehicles are therefore not "clean," as Defendants had advertised.  Upon information and belief Defendants had knowledge of their deception as early as the 2008, when they began an advertising campaign that billed the Defective Vehicles as "clean" ones.   As a direct result of Defendants' concerted efforts to deceive their customers, the public and regulators, Plaintiffs and the Class purchased their Defective Vehicles without

1  knowledge of their true, defective nature.  For this reason, any applicable statute of

2  limitation has therefore been tolled.

3  **Estoppel**

4      58.    Defendants were under a continuous duty to disclose to Plaintiffs and the

5  Class the true character, quality, and nature of the Defective Vehicles.  Nevertheless,

6  Defendants violated that duty and knowingly made misrepresentations about the quality,

7  reliability, characteristics, and performance of the Defective Vehicles.  Plaintiffs and the

8  Class reasonably relied upon Defendants' knowing and affirmative misrepresentations

9  and/or active concealment of these facts.  Based on the foregoing, Defendants are

10  estopped from relying on any statutes of limitation in defense of this action.

11  **Discovery Rule**

12      59.    The causes of action alleged herein did not accrue until Plaintiffs and the

13  Class discovered that their vehicles were defective.  However, Plaintiffs and the Class

14  had no realistic ability to discern that their vehicles were defective and did not comport

15  with Defendants' representations until after approximately September 18, 2015 when the

16  true nature of Defendants' deceptive practices was made public knowledge.

17                    **CLASS ACTION ALLEGATIONS**

18      60.    The term Defective Vehicles as used herein includes the following 2.0 L

19  diesel versions of the following vehicles:

20              a. 2009-2015 Volkswagen Jetta (including the Jetta Sportswagen);

21              b. 2010-2015 Volkswagen Golf (including the Golf Sportswagen);

22              c. 2010-2015 Audi A3;

23              d. 2012-2015 Volkswagen Beetle (including the Beetle Convertible); and

24              e. 2012-2015 Volkswagen Passat.

25      61.    Plaintiffs bring this action as a class action under Federal Rule of Civil

26  Procedure 23(a) and 23(b)(3), on behalf of themselves and all others similarly situated.

27  Plaintiffs seek to represent the following classes, defined as (and collectively referred to

28  as "Class"):

**Nationwide Class**

62.     All current and former owners and lessees of a Defective Vehicle in the United States.

**California Sub-Class**

63.     All current and former owners and lessees of a Defective Vehicle  in California.

**Florida Sub-Class**

64.     All current and former owners and lessees of a Defective Vehicle in Florida.

**Georgia Sub-Class**

65.     All current and former owners and lessees of a Defective Vehicle in Georgia.

**Indiana Sub-Class**

66.     All current and former owners and lessees of a Defective Vehicle in Indiana.

**New Jersey Sub-Class**

67.     All current and former owners and lessees of a Defective Vehicle in New Jersey.

**New York Sub-Class**

68.     All current and former owners and lessees of a Defective Vehicle in New York.

**Tennessee Sub-Class**

69.     All current and former owners and lessees of a Defective Vehicle in Tennessee.

70.     Excluded from the Class are Defendants, as well as Defendants' employees, affiliates, officers, and directors, including franchised dealers, any individuals who experienced physical injuries as a result of the defects at issue in this litigation, and the judge and court staff to whom this case is assigned.  Plaintiff reserves the right to amend

the definition of the class if discovery or further investigation reveals that the class should be expanded or otherwise modified.

71. **Numerosity and impracticality of joinder.** The members of the Class are so numerous that joinder of all members is impractical. Hundreds of thousands of Class members purchased or leased Defective Vehicles. Members of the Class are easily and readily identifiable from information and records in Defendants' possession, custody, or control.

72. **Commonality and predominance.** There are common questions of law and fact that predominate over any questions affecting the individual members of the Class. Common legal and factual questions include, but are not limited to:

 a. Whether Defendants installed a "defeat device" in Defective Vehicles;

 b. Whether the Defective Vehicles fail to comply with the applicable federal and state emissions regulations as a result of the defeat device;

 c. Whether Defendants had a duty to disclose the existence of the defeat device and its consequences to its customers;

 d. Whether Defendants' marketing of Class Vehicles was likely to deceive or mislead consumers;

 e. Whether the existence of the defeat device and its consequences would be considered material by an objectively reasonable person;

 f. Whether Defendants' conduct violates any applicable warranties; and

 g. Whether Defendants' conduct injured Plaintiff and the members of the proposed class.

73. **Typicality.** Plaintiffs' claims are typical of the claims of the other Class members. Like other Class members, Plaintiffs purchased or leased Defective Vehicles that, as matter of deliberate design, emit more dangerous pollutants than is allowable under applicable regulations and that are less "clean" and environmentally friendly than Defendants represented. Plaintiffs and the other Class members suffered damages as a direct, proximate result of the same wrongful practices that Defendants engaged in.

Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

74. **Adequacy.** Plaintiffs will fully and adequately protect the interests of the other members of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class members.

75. **Declaratory and Injunctive Relief.** Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class members as a whole.

76. **Superiority.** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things: (a) it is economically impracticable for members of the Class to prosecute individual actions; (b) prosecution as a class action will eliminate the possibility of repetitious and redundant litigation; and (c) a class action will enable claims to be handled in an orderly and expeditious manner.

## CLAIMS FOR RELIEF

### Statewide Claims Against All Defendants

### California

### COUNT 1

Violation of California's Unfair Competition Law

Cal. Bus. & Prof. Code §§ 17200, et seq.

77. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

78. Plaintiffs bring this claim on behalf of the California Class.

79. Defendants' acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair

1    Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.

2          80.    Defendants' acts and practices constitute unlawful business practices, as

3    discussed elsewhere in this Complaint, in that they violate section 203(a)(3)(B) of the

4    Clean Air Act (CAA), 42 U.S.C. § 7522(a)(3)(B) and its implementing regulations;

5    section 203(a)(l ) of the CAA, 42 U.S .C. § 7522(a)( 1 ) and its implementing

6    regulations; the federal Magnuson-Moss Warranty Act; California's Consumers Legal

7    Remedies Act; California's Song-Beverly Consumer Warranty Act; California law

8    governing vehicle emissions; and breach Volkswagen's warranties.

9          81.    Defendants' acts and practices constitute unfair practices in that (i) they are

10   unethical, unscrupulous, and substantially injurious to consumers; (ii) any legitimate

11   utility of Defendants' conduct is outweighed by the harm to consumers; (iii) the injury

12   is not one that consumers reasonably could have avoided; and/or (iv) the conduct runs

13   afoul of the policies underlying the federal Clean Air Act, its implementing regulations,

14   and California emissions standards, which seek to minimize harmful emissions and

15   provide consumers with accurate information about the pollutant levels emitted by

16   vehicles placed in the stream of commerce.

17         82.    Defendants' acts and practices constitute fraudulent practices in that they

18   are likely to deceive a reasonable consumer, who would not have purchased a Defective

19   Vehicle, or would have paid substantially less for a Defective Vehicle, had Volkswagen

20   had adequately disclosed that the Defective Vehicles failed to comply with federal and

21   California emissions standards.

22         83.    As a direct and proximate result of Defendants' unlawful, unfair, and

23   fraudulent business practices, Plaintiffs and the proposed California Class have suffered

24   injury in fact and lost money or property, in that they bought or leased Defective

25   Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the

26   benefit of their bargain, and their Defective Vehicles suffered a diminution in value. In

27   addition, Plaintiffs and the proposed California Class will incur additional fuel costs,

28   and a diminution in the performance of their respective Defective Vehicles, if and when

1    their Defective Vehicles are altered in order to bring them into compliance with federal

2    and state emissions standards. Meanwhile, Defendants have sold or leased more

3    Defective Vehicles than they otherwise could have and charged inflated prices for

4    Defective Vehicles, thereby unjustly enriching itself.

5          84.    Plaintiffs and the proposed California Class are entitled to equitable relief,

6    including restitutionary disgorgement of all profits accruing to Defendants because of

7    their unfair and deceptive practices and such other orders as may be necessary to

8    prevent the future use of these practices.

9                                    COUNT 2

10                    Violation of California's False Advertising Law

11                      Cal. Bus. & Prof. Code §§ 17500, et seq.

12         85.    Plaintiffs incorporate by reference each preceding and succeeding

13   paragraph as though fully set forth herein.

14         86.    Plaintiffs bring this claim on behalf of the California Class.

15         87.    California's False Advertising Law prohibits any "unfair, deceptive, untrue,

16   or misleading advertising." Cal. Bus. & Prof. Code § 17500. This prohibition extends to

17   advertising which is false, and also advertising which, although true, is either actually

18   misleading or which has a capacity, likelihood or tendency to deceive or confuse the

19   public.

20         88.    Through advertising, marketing, and other publications described at length

21   above, Defendants disseminated, or caused to be disseminated, in California and

22   nationally, statements regarding the Defective Vehicles which were false or misleading,

23   including that these vehicles are "Clean Diesel" vehicles when, in fact, they did not

24   meet federal or California emissions standards.

25         89.    Defendants' misrepresentations and omissions regarding the Defective

26   Vehicles' emissions compliance, its performance, and its fuel efficiency were material

27   and likely to deceive reasonable consumers such as Plaintiffs and the California Class.

28         90.    Volkswagen knew or should have known these statements were false and

1    misleading and would deceive consumers, including Plaintiffs and the California Class.

2        91.   Plaintiffs and the California Class have suffered injury-in-fact, including

3 the loss of money and property, as a result of Defendants' misrepresentations and

4 omissions, which are unfair, deceptive, untrue, or misleading in violation of the False

5 Advertising Law. Plaintiffs and the California Class would not have purchased or leased

6 the Defective Vehicles had they known of the deceptive nature of Defendants'

7 misrepresentations and omissions, or they would have paid less for the Defective

8 Vehicles. Also, Plaintiffs and the proposed class will incur additional fuel costs, and a

9 diminution in the performance of their respective Defective Vehicles, if and when their

10 Defective Vehicles are altered in order to bring them into compliance with federal and

11 state emissions standards.

12        92.   Plaintiffs and the proposed California Class are entitled to equitable relief,

13 including restitutionary disgorgement of all profits accruing to Defendants because of

14 their deceptive practices and an order requiring Volkswagen to adequately disclose and

15 repair the defect.

## COUNT 3

Violation of California's Consumer Legal Remedies Act

Cal. Civ. Code §§ 1750, et seq.

19        93.   Plaintiffs incorporate by reference each preceding and succeeding

20 paragraph as though fully set forth herein.

21        94.   Plaintiffs bring this claim on behalf of the California Class.

22        95.   Defendants violated the Consumers Legal Remedies Act (CLRA),

23 California Civil Code §§ 1770(a)(2), (3), (5), (7), (9), and (16), by engaging in unfair

24 methods of competition and unfair and deceptive acts and practices in connection with

25 transactions—namely, the sale of Defective Vehicles to Plaintiffs and the proposed

26 California Class—that were intended to, and did, result in the sale and lease of goods to

27 consumers.

28        96.   In connection with the sale or lease of Defective Vehicles to Plaintiffs and

20

COMPLAINT

California Class members, Defendants concealed and failed to disclose that Defective Vehicles do not meet federal and state emissions standards and that they achieve their performance and fuel efficiency as a result of an illegal defeat device. These facts are material to a reasonable consumer in that they negatively affect Defective Vehicles' environmental emissions and market value. If and when the Defective Vehicles are altered to bring them into compliance with federal and state emissions standards, Plaintiffs and the proposed class will incur additional fuel costs, and a diminution in the performance of their respective Defective Vehicles.

97.   Defendants had a duty to disclose these facts to consumers because they had exclusive knowledge of those facts, which were not known or reasonably knowable by the Plaintiffs and proposed class; because it actively concealed these material facts from the Plaintiffs and the proposed class; and because it made partial representations regarding Defective Vehicles' emissions and compliance with federal and state emissions law, while at the same time suppressing material facts regarding the vehicle's emissions.

98.   As a direct and proximate result of Defendants' conduct, Plaintiffs and California Class members have been harmed. Plaintiffs and the other California Class members bought or leased Defective Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Defective Vehicles suffered a diminution in value. Meanwhile, Defendants have sold more Defective Vehicles than they otherwise could have and charged inflated prices for Defective Vehicles, thereby unjustly enriching themselves.

99.   Plaintiffs and the proposed Class are entitled to equitable relief and a declaration that Defendants' conduct violates the Consumer Legal Remedies Act.

100.  Plaintiffs disclaims any request for monetary relief, including punitive damages, under the Consumer Legal Remedies Act at this time but reserve the right to seek such relief after providing Defendants with the notice required by the Act.

/ / /

COUNT 4

Violation of the Song-Beverly Consumer Warranty Act

Cal. Civ. Code §§ 1791, et seq.

101.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

102.   Plaintiffs bring this claim on behalf of the California Class.

103.   Defective Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

104.   Volkswagen is a "manufacturer" within the meaning of Cal. Civ. Code § 21791(j).

105.   Volkswagen impliedly warranted to Plaintiffs and the California Class that Defective Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

106.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:  (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3)  Are adequately contained, packaged, and labeled. (4)  Conform to the promises or affirmations of fact made on the container or label.

107.   Defective Vehicles would not pass without objection in the automotive trade because the Defective Vehicles do not conform in material respects with federal and California emissions standards, were sold with an illegal defeat device, as described above, and emit pollutants by a factor of 10 to 40 times above the EPA compliant levels.

108.   As described above, the Defective Vehicles are not fit for ordinary purposes for which such goods are used.

109.   Defective Vehicles are not adequately labeled because the labeling misrepresents that the vehicles are compliant with federal and California emissions standards or fails to disclose such non-compliance.

COMPLAINT

110.    Volkswagen's conduct deprived Plaintiffs and the proposed California Class of the benefit of their bargain and has caused Defective Vehicles to be worth less than what Plaintiffs and other proposed California Class members paid.

111.    As a direct and proximate result of Volkswagen's breach of its duties, proposed California Class members received goods whose condition substantially impairs their value. Plaintiffs and the proposed California Class have been damaged by the diminished value of the vehicles, the vehicles' malfunctioning, and actual and potential increased maintenance and repair costs.

112.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

113.    Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and proposed California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Defective Vehicles, or the overpayment or diminution in value of their Defective Vehicles, and are also entitled to their attorney fees and costs.

### Florida

### COUNT 5

Violation of the Florida Deceptive and Unfair Trade Practices Act

Fla. Stat. §§ 501.201, et seq.

114.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

115.    Plaintiffs bring this claim on behalf of the Florida Class.

116.    Plaintiffs are "consumers" within the meaning of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

117.    Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8). FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or

commerce …" Fla. Stat. § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

118.   In the course of their business, Defendants failed to disclose and actively concealed that the Defective Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

119.   Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Defective Vehicles.

120.   By failing to disclose and by actively concealing the true nature of the Defective Vehicles' dirty emissions, by marketing them as clean, fuel efficient, safe, reliable and of high quality, and by presenting themselves as reputable and honest manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the FDUTPA.

121.   Defendants owed Plaintiffs and the Class a duty to disclose the true nature of the Defective Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

122.   The value of the Defective Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Defective Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

123.   Defendants' failure to disclose and active concealment of the nature of the

Defective Vehicles' emissions were material to Plaintiffs and the Florida Class.

124.    Plaintiffs and the Florida Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Defective Vehicles' emissions, Plaintiffs and the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

125.    As a direct and proximate result of Defendants' violations of the FDUTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual damage.

126.    Plaintiffs and the Florida Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

127.    Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

<u>COUNT 6</u>

Breach of Implied Warranty of Merchantability

Fla. Stat. §§ 672.314, et seq.

128.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

129.    Plaintiffs bring this claim on behalf of the Florida Class.

130.    A warranty that the Defective Vehicles were in merchantable condition was implied by law in the Defective Vehicle transactions, pursuant to Fla. Stat. § 672.314.

131.    The Defective Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

132.    Plaintiffs and the Florida Class, at all relevant times, were intended direct

1  and/or third-party beneficiaries of: Defendants' sale of the Defective Vehicles to
2  Plaintiffs and the Florida Class.

3  133.   Defendants were provided notice of these issues by their knowledge of the
4  issues, prior complaints filed against them and/or others, and internal investigations.

5  134.   As a direct and proximate result of Defendants' breach of the warranties of
6  merchantability and fitness for a particular purpose, Plaintiffs and the Florida Class have
7  been damaged in an amount to be proven at trial.

## Georgia

### COUNT 7

Violation of the Georgia Fair Business Practices Act

Ga. Code Ann. §§ 10-1-390, et seq.

12  135.   Plaintiffs incorporate by reference each preceding and succeeding
13  paragraph as though fully set forth herein.

14  136.   Plaintiffs bring this claim on behalf of the Georgia Class.

15  137.   Plaintiffs and the Georgia Class are "consumers" within the meaning of Ga.
16  Code Ann. §§ 10-1-392(6).

17  138.   Plaintiffs, the Georgia Class, and Defendants are "persons" within the
18  meaning Ga. Code Ann. §§ 10-1-392(24).

19  139.   Defendants were and are engaged in "trade" and "commerce" within the
20  meaning of Ga. Code Ann. §§ 10-1-392(28).

21  140.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares
22  "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and
23  consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. § 10-1-
24  393(a), including but not limited to "representing that goods or services have
25  sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they
26  do not have," "[r]epresenting that goods or services are of a particular standard, quality,
27  or grade … if they are of another," and "[a]dvertising goods or services with intent not
28  to sell them as advertised," Ga. Code Ann. § 10-1-393(b).

141.   By failing to disclose and actively concealing that the Defective Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public, Defendants engaged in unfair or deceptive practices prohibited by the FBPA, including: (1) representing that the Defective Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; (2) representing that they are of a particular standard, quality, and grade when they are not; and (3) advertising them with the intent not to sell or lease them as advertised.

142.   Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Defective Vehicles.

143.   By failing to disclose and by actively concealing the excessive, toxic emissions in the Defective Vehicles, by marketing them as clean, fuel efficient, safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Georgia FBPA.

144.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true nature and reliability of Defective Vehicles, the quality of Defendants' brands, and the true value of the Defective Vehicles.

145.   Defendants knew or should have known that their conduct violated the Georgia FBPA.

146.   As alleged above, Defendants made material statements about the environmental friendliness, fuel efficiency, performance, safety and reliability of the

Defective Vehicles that were either false or misleading.

147.   Defendants owed Plaintiffs and the Class a duty to disclose the true nature of the Defective Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

148.   The value of the Defective Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Defective Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

149.   Defendants' failure to disclose and active concealment of the nature of the Defective Vehicles' emissions were material to Plaintiffs and the Georgia Class.

150.   Plaintiffs and the Georgia Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Defective Vehicles' emissions, Plaintiffs and the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

151.   As a direct and proximate result of Defendants' violations of the Georgia FBPA, Plaintiffs and the Georgia Class have suffered injury-in-fact and/or actual damage.

152.   Plaintiff and the Georgia Class are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code Ann. § 10-1-399(a).

153.   Plaintiffs also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code Ann. § 10-1-399.

1

COUNT 8

2

Violation of the Georgia Uniform Deceptive Trade Practices Act

3

Ga. Code Ann. §§ 10-1-370, et seq.

4    154.   Plaintiffs incorporate by reference each preceding and succeeding

5    paragraph as though fully set forth herein.

6    155.   Plaintiffs bring this claim on behalf of the Georgia Class.

7    156.   Plaintiffs, the Georgia Class, and Defendants are "persons" within the

8    meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga.

9    Code Ann. § 10-1-371(5).

10    157.   The Georgia UDTPA prohibits "deceptive trade practices," which include

11    the "misrepresentation of standard or quality of goods or services," and "engaging in any

12    other conduct which similarly creates a likelihood of confusion or of misunderstanding."

13    Ga. Code Ann. § 10-1-372(a).

14    158.   By failing to disclose and actively concealing that the Defective Vehicles

15    emit more toxic pollutants than (a) is allowable under the applicable regulations and (b)

16    than was represented by Defendants to the regulators and public, Defendants engaged in

17    deceptive trade practices prohibited by the Georgia UDTPA.

18    159.   Defendants' unfair or deceptive acts or practices, including these

19    concealments, omissions, and suppressions of material facts, had a tendency or capacity

20    to mislead, tended to create a false impression in consumers, were likely to and did in

21    fact deceive reasonable consumers, including Plaintiffs, about the true nature and

22    reliability of Defective Vehicles, the quality of Defendants' brands, and the true value of

23    the Defective Vehicles.

24    160.   Defendants knew or should have known that their conduct violated the

25    Georgia UDTPA.

26    161.   As alleged above, Defendants made material statements about the

27    environmental friendliness, fuel efficiency, performance, safety and reliability of the

28    Defective Vehicles that were either false or misleading.

162.    Defendants owed Plaintiffs and the Class a duty to disclose the true nature of the Defective Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

163.    The value of the Defective Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Defective Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

164.    Defendants' failure to disclose and active concealment of the nature of the Defective Vehicles' emissions were material to Plaintiffs and the Georgia Class.

165.    Plaintiffs and the Georgia Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Defective Vehicles' emissions, Plaintiffs and the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

166.    As a direct and proximate result of Defendants' violations of the Georgia UDTPA, Plaintiffs and the Georgia Class have suffered injury-in-fact and/or actual damage.

167.    Plaintiffs seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code Ann. § 10-1-373.

/ / /

/ / /

/ / /

**Indiana**

COUNT 9

Violation of the Indiana Deceptive Consumer Sales Act

Ind. Code §§ 24-5-0.5-3, et seq.

168.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

169.   Plaintiffs bring this claim on behalf of the Indiana Class.

170.   Defendants are "persons" within the meaning of Ind. Code § 24-5-0.5-2(2) and "suppliers" within the meaning of Ind. Code § 24-5-.05-2(a)(3).

171.   Plaintiffs' and Indiana members' purchases of the Class Vehicles are "consumer transactions" within the meaning of Ind. Code § 24-5-.05-2(a)(1).

172.   Indiana's Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a person from engaging in a "deceptive trade practice," which includes representing: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; … (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other supplier shall know or have reason to know that such representation was false."

173.   By failing to disclose and actively concealing that the Defective Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b)

than was represented by Defendants to the regulators and public, Defendants engaged in unfair or deceptive practices prohibited by the Indiana DCSA, including: (1) representing that the Defective Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; (2) representing that they are of a particular standard, quality, and grade when they are not; and (3) advertising them with the intent not to sell or lease them as advertised.

174.    Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Defective Vehicles.

175.    By failing to disclose and by actively concealing the excessive, toxic emissions in the Defective Vehicles, by marketing them as clean, fuel efficient, safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Indiana DCSA.

176.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true nature and reliability of Defective Vehicles, the quality of Defendants' brands, and the true value of the Defective Vehicles.

177.    Defendants knew or should have known that their conduct violated the Indiana DCSA.

178.    As alleged above, Defendants made material statements about the environmental friendliness, fuel efficiency, performance, safety and reliability of the Defective Vehicles that were either false or misleading.

179.    Defendants owed Plaintiffs and the Class a duty to disclose the true nature

of the Defective Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

180.   The value of the Defective Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Defective Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

181.   Defendants' failure to disclose and active concealment of the nature of the Defective Vehicles' emissions were material to Plaintiffs and the Indiana Class.

182.   Plaintiffs and the Indiana Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Defective Vehicles' emissions, Plaintiffs and the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

183.   As a direct and proximate result of Defendants' violations of the Indiana DCSA, Plaintiffs and the Indiana Class have suffered injury-in-fact and/or actual damage.

184.   Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs and the Indiana Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff and each Indiana Sub-Class member, including treble damages up to $1,000 for Defendants' willfully deceptive acts.

185.   Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Defendants' conduct and Defendants' high net worth.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT 10

Breach of Implied Warranty of Merchantability

Ind. Code §§ 26-1-2-314, et seq.

186.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

187.   Plaintiffs bring this claim on behalf of the Indiana Class.

188.   Defendants are and were at all relevant times merchants with respect to motor vehicles within the meaning of Ind. Code § 26-1-2-104(1).

189.   A warranty that the Defective Vehicles were in merchantable condition was implied by law in the Defective Vehicle transactions, pursuant to Ind. Code § 26-1-2-314.

190.   The Defective Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

191.   Plaintiffs and the Indiana Class, at all relevant times, were intended direct and/or third-party beneficiaries of: Defendants' sale of the Defective Vehicles to Plaintiffs and the Indiana Class.

192.   Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations.

193.   As a direct and proximate result of Defendants' breach of the warranties of merchantability and fitness for a particular purpose, Plaintiffs and the Indiana Class have been damaged in an amount to be proven at trial.

/ / /

/ / /

/ / /

/ / /

**New Jersey**

COUNT 11

Violation of the New Jersey Consumer Fraud Act

N.J. Stat. Ann. §§ 65:8-1, et seq.

194.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

195.   Plaintiffs bring this claim on behalf of the New Jersey Class.

196.   Plaintiffs, the New Jersey Class, and Defendants are or were "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

197.   Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

198.   The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. Stat. Ann. § 56:8-2.  Defendants engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Class members rely upon their acts, concealment, suppression or omissions.

199.   By failing to disclose and actively concealing that the Defective Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public, Defendants engaged in unfair or deceptive practices prohibited by the New Jersey CFA, including: (1) representing that the Defective Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; (2)

representing that they are of a particular standard, quality, and grade when they are not; and (3) advertising them with the intent not to sell or lease them as advertised.

200.   Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Defective Vehicles.

201.   By failing to disclose and by actively concealing the excessive, toxic emissions in the Defective Vehicles, by marketing them as clean, fuel efficient, safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the New Jersey CFA.

202.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true nature and reliability of Defective Vehicles, the quality of Defendants' brands, and the true value of the Defective Vehicles.

203.   Defendants knew or should have known that their conduct violated the New Jersey CFA.

204.   As alleged above, Defendants made material statements about the environmental friendliness, fuel efficiency, performance, safety and reliability of the Defective Vehicles that were either false or misleading.

205.   Defendants owed Plaintiffs and the Class a duty to disclose the true nature of the Defective Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing

generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

206. The value of the Defective Vehicles has greatly diminished as a result of Defendants' deceitful conduct. In light of the stigma attached to Defective Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

207. Defendants' failure to disclose and active concealment of the nature of the Defective Vehicles' emissions were material to Plaintiffs and the New Jersey Class.

208. Plaintiffs and the New Jersey Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the true nature of the Defective Vehicles' emissions, Plaintiffs and the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

209. As a direct and proximate result of Defendants' violations of the New Jersey CFA, Plaintiffs and the New Jersey Class have suffered injury-in-fact and/or actual damage.

210. Plaintiffs and the New Jersey Class are entitled to recover legal and/or equitable relief including an order enjoining the Defendants' unlawful conduct, treble damages, costs and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

COUNT 12

Breach of Implied Warranty of Merchantability

N.J. Stat. Ann. §§ 12a:2-314, et seq.

211. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

212. Plaintiffs bring this claim on behalf of the New Jersey Class.

213. A warranty that the Defective Vehicles were in merchantable condition was

1   implied by law in the Defective Vehicle transactions.

2   214.   The Defective Vehicles, when sold and at all times thereafter, were not

3   merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they

4   are inherently defective in that they emit more toxic pollutants than (a) is allowable

5   under the applicable regulations and (b) than was represented by Defendants to the

6   regulators and public.

7   215.   Plaintiffs and the New Jersey Class, at all relevant times, were intended

8   direct and/or third-party beneficiaries of: Defendants' sale of the Defective Vehicles to

9   Plaintiffs and the New Jersey Class.

10   216.   Defendants were provided notice of these issues by their knowledge of the

11   issues, prior complaints filed against them and/or others, and internal investigations.

12   217.   As a direct and proximate result of Defendants' breach of the warranties of

13   merchantability and fitness for a particular purpose, Plaintiffs and the New Jersey Class

14   have been damaged in an amount to be proven at trial.

## **New York**

### COUNT 13

Violation of New York General Business Law

N.Y. Gen. Bus. Law § 349

19   218.   Plaintiffs incorporate by reference each preceding and succeeding

20   paragraph as though fully set forth herein.

21   219.   Plaintiffs bring this claim on behalf of the New York Class.

22   220.   Plaintiffs and New York Sub-Class are "persons" within the meaning of

23   New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

24   221.   Defendants are "persons," "firms," "corporations," or "associations" within

25   the meaning of N.Y. Gen. Bus. Law § 349.

26   222.   The New York GBL makes unlawful "[d]eceptive acts or practices in the

27   conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Defendants'

28   conduct directed toward consumers, as described above and below, constitutes

1 "deceptive acts or practices" within the meaning of the New York GBL.

2 223. Defendants' actions as set forth above occurred in the conduct of trade or

3 commerce.

4 224. By failing to disclose and actively concealing that the Defective Vehicles

5 emit more toxic pollutants than (a) is allowable under the applicable regulations and (b)

6 than was represented by Defendants to the regulators and public, Defendants engaged in

7 unfair or deceptive practices prohibited by the New York GBL, including: (1)

8 representing that the Defective Vehicles and/or the Defective Airbags installed in them

9 have characteristics, uses, benefits, and qualities which they do not have; (2)

10 representing that they are of a particular standard, quality, and grade when they are not;

11 and (3) advertising them with the intent not to sell or lease them as advertised.

12 225. Defendants also engaged in unlawful trade practices by employing

13 deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

14 suppression or omission of any material fact with intent that others rely upon such

15 concealment, suppression or omission, in connection with the sale of the Defective

16 Vehicles.

17 226. By failing to disclose and by actively concealing the excessive, toxic

18 emissions in the Defective Vehicles, by marketing them as clean, fuel efficient, safe,

19 reliable, and of high quality, and by presenting themselves as reputable manufacturers,

20 Defendants engaged in unfair or deceptive business practices in violation of the New

21 York GBL.

22 227. Defendants' unfair or deceptive acts or practices, including these

23 concealments, omissions, and suppressions of material facts, had a tendency or capacity

24 to mislead, tended to create a false impression in consumers, were likely to and did in

25 fact deceive reasonable consumers, including Plaintiffs, about the true nature and

26 reliability of Defective Vehicles, the quality of Defendants' brands, and the true value of

27 the Defective Vehicles.

28 228. Defendants knew or should have known that their conduct violated the New

York GBL.

229. As alleged above, Defendants made material statements about the environmental friendliness, fuel efficiency, performance, safety and reliability of the Defective Vehicles that were either false or misleading.

230. Defendants owed Plaintiffs and the Class a duty to disclose the true nature of the Defective Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

231. The value of the Defective Vehicles has greatly diminished as a result of Defendants' deceitful conduct. In light of the stigma attached to Defective Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

232. Defendants' failure to disclose and active concealment of the nature of the Defective Vehicles' emissions were material to Plaintiffs and the New York Class.

233. Plaintiffs and the New York Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the true nature of the Defective Vehicles' emissions, Plaintiffs and the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

234. As a direct and proximate result of Defendants' violations of the New York GBL, Plaintiffs and the New York Class have suffered injury-in-fact and/or actual damage.

235. Because Defendants' willful and knowing conduct caused injury to the New York Sub-Class, the New York Sub-Class seeks recovery of actual damages or $50,

whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

COUNT 14

Violation of New York General Business Law

N.Y. Gen. Bus. Law § 350

236.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

237.   Plaintiffs bring this claim on behalf of the New York Class.

238.   Defendants were and are engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

239.   N.Y. Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made]  with respect to the commodity …." N.Y. Gen. Bus. Law § 350-a.

240.   Defendants caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers and the New York Class.

241.   Defendants have violated § 350 because the misrepresentations and omissions regarding the Defective Vehicles' ability to run "clean," without emanating excessive toxic pollutants, and their ability to achieve favorable miles per gallon ratings were material and likely to deceive a reasonable consumer.

242.   New York Class members have suffered an injury, including the loss of money or property, as a result of Defendants' false advertising. In purchasing or leasing

Defective Vehicles, New York Plaintiffs and the New York Class relied on the misrepresentations and/or omissions of Defendants with respect to the level of toxic pollutants emitted by the Defective Vehicles, as well as the Defective Vehicles' fuel efficiency, performance, safety and reliability.

243.   Defendants' representations were false and/or misleading because the concealed toxic emissions defect seriously undermines the value of the Defective Vehicles.  Had Plaintiffs and the New York Class known this, they would not have purchased or leased their vehicles

244.   and/or paid as much for them.

245.   Pursuant to N.Y. Gen. Bus. Law § 350 e, the New York Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for New York Class member. Because Defendants' conduct was committed willfully and knowingly, New York members are entitled to recover three times actual damages, up to $10,000, for each New York Class member.

246.   1612. The New York Class also seeks an order enjoining Defendants' unfair,  unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under General Business Law § 350.

## **Tennessee**

## COUNT 15

Violation of the Tennessee Consumer Protection Act

Tenn. Code Ann. §§ 47-18-101, et seq.

247.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

248.   Plaintiffs bring this claim on behalf of the Tennessee Class.

249.   Plaintiffs and the Tennessee Class are "natural persons" and "consumers" within the meaning of Tenn. Code Ann. § 47-18-103(2).

250.   Defendants are "persons" within the meaning of Tenn. Code Ann. § 47-18-

103(2) (the "Act").

251.  Defendants' conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

252.  The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "Representing that goods or services have … characteristics, [or] … benefits … that they do not have…;" "Representing that goods or services are of a particular standard, quality or grade… if they are of another;" and "Advertising goods or services with intent not to sell them as advertised." Tenn. Code Ann. § 47-18-104. Defendants violated the Tennessee CPA by engaging in unfair or deceptive acts, including representing that Defective Vehicles have characteristics or benefits that they did not have; representing that Defective Vehicles are of a particular standard, quality, or grade when they are of another; and advertising Defective Vehicles with intent not to sell or lease them as advertised.

253.  By failing to disclose and actively concealing that the Defective Vehicles emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public, Defendants engaged in unfair or deceptive practices prohibited by the Tennessee CPA, including: (1) representing that the Defective Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; (2) representing that they are of a particular standard, quality, and grade when they are not; and (3) advertising them with the intent not to sell or lease them as advertised.

254.  Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Defective Vehicles.

255.  By failing to disclose and by actively concealing the excessive, toxic

emissions in the Defective Vehicles, by marketing them as clean, fuel efficient, safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers, Defendants engaged in unfair or deceptive business practices in violation of the Tennessee CPA.

256.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true nature and reliability of Defective Vehicles, the quality of Defendants' brands, and the true value of the Defective Vehicles.

257.   Defendants knew or should have known that their conduct violated the Tennessee CPA.

258.   As alleged above, Defendants made material statements about the environmental friendliness, fuel efficiency, performance, safety and reliability of the Defective Vehicles that were either false or misleading.

259.   Defendants owed Plaintiffs and the Class a duty to disclose the true nature of the Defective Vehicles' emissions, fuel efficiency, performance, safety and reliability because Defendants: (a) possessed exclusive knowledge of the dangers and risks posed by the foregoing; (b) intentionally concealed the foregoing from Plaintiffs; and/or (c) made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

260.   The value of the Defective Vehicles has greatly diminished as a result of Defendants' deceitful conduct.  In light of the stigma attached to Defective Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

261.   Defendants' failure to disclose and active concealment of the nature of the Defective Vehicles' emissions were material to Plaintiffs and the Tennessee Class.

262.    Plaintiffs and the Tennessee Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the true nature of the Defective Vehicles' emissions, Plaintiffs and the Class either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiffs and the Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

263.    As a direct and proximate result of Defendants' violations of the Tennessee CPA, Plaintiffs and the Tennessee Class have suffered injury-in-fact and/or actual damage.

264.    Pursuant to Tenn. Code Ann. § 47-18-109(a), Plaintiffs and the Tennessee Class seek monetary relief against Defendants measured as actual damages in an amount to be determined at trial, treble damages as a result of Defendants' willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

<u>COUNT 16</u>

Breach of Implied Warranty of Merchantability

265.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

266.   Plaintiffs bring this claim on behalf of the Tennessee Class.

267.    Defendants are merchants with respect to motor vehicles within the meaning of Tenn. Code Ann. § 47-2-314.

268.    A warranty that the Defective Vehicles were in merchantable condition was implied by law in the Defective Vehicle transactions.

269.    The Defective Vehicles, when sold and at all times thereafter, were not merchantable or fit for the ordinary purpose for which cars are used.  Specifically, they are inherently defective in that they emit more toxic pollutants than (a) is allowable under the applicable regulations and (b) than was represented by Defendants to the regulators and public.

270.    Plaintiffs and the Tennessee Class, at all relevant times, were intended

1   direct and/or third-party beneficiaries of: Defendants' sale of the Defective Vehicles to

2   Plaintiffs and the Tennessee Class.

3       271.   Defendants were provided notice of these issues by their knowledge of the

4   issues, prior complaints filed against them and/or others, and internal investigations.

5       272.   As a direct and proximate result of Defendants' breach of the warranties of

6   merchantability and fitness for a particular purpose, Plaintiffs and the Tennessee Class

7   have been damaged in an amount to be proven at trial.

8   **<u>Nationwide Claims Against All Defendants</u>**

9   <u>COUNT 17</u>

10  Fraudulent Concealment

11      273.   Plaintiffs incorporate by reference each preceding and succeeding

12  paragraph as though fully set forth herein.

13      274.   Plaintiffs bring this Count on behalf of the Nationwide Class.

14      275.   Defendants intentionally concealed material facts from Plaintiffs, the other

15  Class members, the public, and regulators, including but not limited to the EPA and

16  CARB.  Defendants knew that the Defective vehicles were designed and manufactured

17  with a failed emissions control system, but Defendants concealed those material facts.

18  Although the Defective Vehicles contain material design defects that Defendants knew

19  of at the time of distribution, Defendants recklessly manufactured and distributed those

20  vehicles to consumers in the United States.  Those consumers had no knowledge of the

21  defects.

22      276.   Defendants had a duty to disclose the facts to Plaintiffs, the other Class

23  members, the public, and Regulators, but failed to do so.

24      277.   Defendants knew that Plaintiffs and the other Class members had no

25  knowledge of those facts and that neither Plaintiffs nor the other Class members had an

26  equal opportunity to discover the facts.  Defendants were in a position of superiority

27  over Plaintiffs and the other Class members.  Indeed, Plaintiffs and the other Class

28  members trusted Defendants not to sell or lease them vehicles that were defective or that

violated federal law governing motor vehicle functioning and safety.

278.   By failing to disclose these material facts, Defendants intended to induce Plaintiffs and the other Class members to purchase or lease the Defective Vehicles.

COUNT 18

Unjust Enrichment

279.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

280.   Plaintiffs bring this claim on behalf of the Nationwide Class under the common law of unjust enrichment, as there are no true conflicts (case-dispositive differences) among various states' laws of unjust enrichment.

281.   Defendants have received and retained a benefit from the Plaintiffs and the Class and inequity has resulted.

282.   Defendants have benefitted through their unjust conduct by selling Defective Vehicles with a concealed safety- and reliability-related defect, at a profit and for more than these Defective Vehicles were worth to Plaintiffs, who overpaid for them and/or would not have purchased them at all.

283.   It is inequitable for Defendants to retain these benefits.

284.   Plaintiffs do not have an adequate remedy at law.

285.   As a result of Defendants' conduct, the amount of Defendants' unjust enrichment should be disgorged in an amount to be proven at trial.

COUNT 19

Violation of 18 U.S.C. § 1962(c), the Racketeer Influenced And Corrupt Organizations Act ("RICO")

286.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

287.   Plaintiffs bring this Count on behalf of the Nationwide Class.

288.   Defendants are all "persons" under 18 U.S.C. § 1961(3).

289.   Defendants violated 18 U.S.C § 1962(c) by participating in or conducting

the affairs of the Volkswagen RICO Enterprise through a pattern of racketeering activity.

290.   Plaintiffs and members of the Class are "person[s] injured in his or her business or property" by reason of the Defendants' violation of RICO within the meaning of 18 U.S.C. § 1964(c).

The Volkswagen RICO Enterprise

291.   The following persons, and others presently unknown, have been members of and constitute an "association-in-fact enterprise" within the meaning of RICO, and will be referred to herein collectively as the Volkswagen RICO Enterprise:

a.   Defendants, who designed, manufactured, and sold millions of Defective Vehicles knowing that they emitted a much greater amount of toxic pollutants than (a) allowed under applicable regulations and (b) represented to Plaintiffs, the Class and the consuming public generally.

b.   The Defendants' Officers, Executives, and Engineers, who have collaborated and colluded with each other and with other associates in fact in the Volkswagen RICO Enterprise to deceive Plaintiffs and the Class into purchasing Defective Vehicles, and who actively concealed the true and dirty nature of the Defective Vehicles from Plaintiffs and the Class.

292.   The Volkswagen RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose. The Volkswagen RICO Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

293.   While Defendants participated in the conduct of the Volkswagen RICO Enterprise, they had an existence separate and distinct from the Volkswagen RICO Enterprise. Further, the Volkswagen RICO Enterprise was separate and distinct from the pattern of racketeering in which Defendants have engaged.

294.   At all relevant times, Defendants operated, controlled or managed the Volkswagen RICO Enterprise, through a variety of actions described herein. Defendants' participation in the Volkswagen RICO Enterprise was necessary for the successful operation of its scheme to defraud because Defendants manufactured the Defective Vehicles, concealed the true nature of the Defective Vehicles, and profited from such concealment.

295.   The members of the Volkswagen RICO Enterprise all served a common purpose: to sell as many Defective Vehicles as possible to the public, and thereby maximize the revenue and profitability of the Volkswagen RICO Enterprise's members. The members of the Volkswagen RICO Enterprise shared the bounty generated by the enterprise, *i.e.*, by sharing the benefit derived from increased sales revenue generated by the scheme to defraud.  Each member of the Volkswagen RICO Enterprise benefited from the common purpose of the scheme to defraud:  Defendants sold or leased more Defective Vehicles, and received more for those vehicles, than they would have otherwise had the "defeat device" and true amount of pollutant emissions not been concealed.

296.   Defendants conducted and participated in the conduct of the affairs of Volkswagen RICO Enterprise through a pattern of racketeering activity that has lasted for more than a decade, beginning no later than 2004 and continuing to this day, and that consisted of numerous and repeated violations of the federal mail and wire fraud statutes, which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

297.   The purpose of the scheme to defraud was to conceal the fact that, contrary to Defendants' express representations, the Defective Vehicles were not "clean," but instead emitted incredibly high levels of toxic pollutants, including nitrogen oxide. Defendants' opted to conceal this information in order to sell more Defective Vehicles, to sell them at a higher price, and to avoid incurring the expenses associated with manufacturing actually "clean" vehicles.  To further the scheme to defraud, Defendants

repeatedly misrepresented and concealed the nature of the Defective Vehicles. Specifically, Defendants repeatedly described the Defective Vehicles as "clean," "environmentally friendly," and "fuel efficient."

298.    To carry out, or attempt to carry out the scheme to defraud, Defendants have conducted or participated in the conduct of the affairs of the Volkswagen RICO Enterprise through a pattern of racketeering activity that employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

    a.    Defendants devised and furthered the scheme to defraud by use of the mail, telephone, and internet, and transmitted, or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, writing(s) and/or signal(s), including Defendants' website, communications with regulatory agencies, statements to the press, and communications with other members of the Volkswagen RICO Enterprise, as well as advertisements and other communications to Defendants' customers, including Plaintiffs and Class Members; and

    b.    Defendants utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described herein.

299.    Defendants' conduct in furtherance of this scheme was intentional. Plaintiffs and the Class were harmed as a result of Defendants' intentional conduct. Plaintiffs, the Class, and regulators, among others, relied on Defendants' material misrepresentations and omissions.

300.    As described throughout this Complaint, Defendants engaged in a pattern of related and continuous predicate acts for more than a decade. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of defrauding Plaintiffs and other Class members and obtaining significant monies and revenues from them while providing Defective Vehicles worth significantly less than the purchase price paid. The predicate acts also had the same or similar results, participants,

1  victims, and methods of commission. The predicate acts were related and not isolated

2  events.

3      301. The predicate acts all had the purpose of generating significant revenue and

4  profits for Defendants at the expense of Plaintiffs and the Class. The predicate acts were

5  committed or caused to be committed by Defendants through their participation in the

6  Volkswagen RICO Enterprise and in furtherance of its fraudulent scheme, and were

7  interrelated in that they involved obtaining Plaintiffs' and Class members' funds and

8  avoiding the expenses associated with remediating the Defective Vehicles.

9      302. By reason of and as a result of the conduct of Defendants, and in particular,

10  its pattern of racketeering activity, Plaintiffs and the Class have been injured in their

11  business and/or property in multiple ways, including but not limited to:

12      a.  overpayment for leased or purchased Defective Vehicles, in that Plaintiffs

13          believed they were paying for vehicles that met certain emission and fuel

14          efficiency standards and obtained vehicles with anything but;

15      b.  the value of the Defective Vehicles has diminished, thus reducing their

16          resale value;

17      c.  out-of-pocket and loss-of-use expenses;

18      d.  payment for alternative transportation; and

19      e.  loss of employment due to lack of transportation.

20      303. Defendants' violations of 18 U.S.C. § 1962(c) have directly and

21  proximately caused injuries and damages to Plaintiffs and the Class, and Plaintiffs and

22  the Class are entitled to bring this action for three times their actual damages, as well as

23  injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §

24  1964(c).

25                                      COUNT 20

26      Violation of 15 U.S.C. §§ 2301 *et seq.*, the Magnuson-Moss Warranty Act

27      304. Plaintiffs incorporate by reference each preceding and succeeding

28  paragraph as though fully set forth herein.

305.   Plaintiffs bring this Count on behalf of the Nationwide Class.

306.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

307.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

308.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

309.   The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

310.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

311.   Defendants express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Defective Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

312.   Defendants breached these warranties as described in more detail above. Without limitation, the Defective Vehicles share a common design defect in that they emit more pollutants than (a) is allowable under the applicable regulations and (b) Defendants repeatedly represented to their customers, the public and regulators. Defendants have admitted that the Defective Vehicles are defective in issuing the recall.

313.   Plaintiffs and each of the other Class members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and each of the other Class members, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and its dealers, and specifically, of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

Finally, privity is also not required because the Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

314. Affording Defendants a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Defective Vehicle, Defendants knew of the misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

315. Plaintiffs and the other Class members would suffer economic hardship if they returned their Defective Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and have not immediately returned any payments made, Plaintiffs and the other Class members have not re-accepted their Defective Vehicles by retaining them.

316. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

(a) An order certifying the proposed Class designating Plaintiffs as the named representatives of the Class, and designating the undersigned as Class Counsel;

(b) An order requiring Defendants to buy back the Defective Vehicles or, alternatively, free of charge: (i) remove their defeat devices, (ii) ensure that they

comply with all applicable emissions standards, (iii) ensure they conformed to promised performance and fuel economy guarantees;

(c)     An order awarding Plaintiffs and the proposed Class compensatory, exemplary, and statutory penalties and/or damages, including interest, in an amount to be proven at trial;

(d)     A declaration that the Defendants must disgorge, for the benefit of Plaintiffs and the Class, all or part of the ill-gotten profits it received from the sale or lease of the Defective Vehicles, or make full restitution to Plaintiffs and the Class Members;

(e)     An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Defective Vehicles, and directing Defendants to expeditiously, and completely repair the Defective Vehicles;

(f)     An award of attorneys' fees and costs, as allowed by law;

(g)     An award of attorneys' fees and costs;

(h)     An award of pre-judgment and post-judgment interest, as provided by law;

(i)     Leave to amend this Complaint to conform to the evidence produced at trial and such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury on all issues so triable.

Respectfully submitted,

Dated:  September 24, 2015          By:  */s/ Roland Tellis*
                                        Roland Tellis

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
Pablo Orozco (SBN 274267)
porozco@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:  (818) 839-2333
*Counsel for Plaintiff and the Class*